[Cite as *In re A.V.*, 2021-Ohio-3873.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | CASE NOS. CA2021-04-030 |
|  |  | CA2021-04-031 |
| A.V., et al. | : | CA2021-04-032 |
|  |  | CA2021-04-033 |
|  | : |  |
|  | : | O P I N I O N |
|  |  | 11/1/2021 |
|  | : |  |
|  | : |  |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 20-D000049; 20-D000050; 20-D000051; 20-D000052

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Father, pro se.

Kelly M. McKoy, for Mother.

Andrew G. Ostrowski, for CASA.

**M. POWELL, J.**

{¶ 1} Appellant ("Father") appeals a decision of the Warren County Court of Common Pleas, Juvenile Division, adjudicating his children dependent.

{¶ 2} Father and Mother are the parents of four minor children, A.V., E.V., I.V., and

O.V.  At the time the Warren County Children Services Board ("WCCS") filed a complaint, A.V. was 14 years old, E.V. and I.V. were 13 years old, and O.V. was 9 years old.

{¶ 3}  In October 2018, the parents began divorce proceedings in the Warren County Court of Common Pleas, Domestic Relations Division.  During the pendency of the divorce, the parents resided apart from one another and shared custody of the children.  In November 2019, Father was designated sole custodian of the children.  In December 2019, the domestic relations court ordered the parents to submit to a hair follicle drug screen.  Father's drug screen came back positive for cocaine, opiates, and PCP; Mother's drug screen came back positive for cocaine and opiates.[1]  Consequently, the domestic relations court made a referral to WCCS.

{¶ 4}  Following the referral, WCCS caseworker Katherine Mullins met with Father and the children on January 9, 2020, at Father's home.  In discussing the hair follicle test results, Father admitted using cocaine in September and/or October 2019 and methamphetamine in December 2019.  Father advised Mullins that he was engaging in individual substance abuse counseling at Talbert House.  Father provided a negative drug screen on January 9, 2020.  Mullins concluded that Father's home was appropriate, and the children were safe.  Mullins left the children in Father's care.  At some point Father provided Mullins with a release of information to permit her to monitor his treatment progress at Talbert House.

{¶ 5}  Mullins met with Mother on January 23, 2020.  Mother tested positive for cocaine and Xanax that day.  Mother admitted using cocaine a few days earlier, admitted she was struggling with substance abuse, and advised Mullins she was actively engaged

---

1. There is a discrepancy regarding the results of Father's hair follicle drug screen.  A caseworker testified it came back positive for cocaine, opiates, and PCP.  Father testified it came back positive for cocaine and methamphetamine but not PCP.  The results of the drug screen are not in the record.  The record indicates that methamphetamine and cocaine are Father's drugs of choice.

in treatment at Talbert House.

{¶ 6} Mullins met with Father again on March 10, 2020. Father tested positive for methamphetamine that day and admitted using the drug the previous weekend. Having received information that Father was missing some of his counseling sessions at Talbert House, Mullins was concerned for the children's well-being. With the agreement of both Mother and Father, Mullins initiated a safety plan and placed the children with their Paternal Grandmother. Under the safety plan, Paternal Grandmother was to supervise all contact between the children and parents; the parents were required to have regular contact with WCCS and engage in substance abuse treatment.

{¶ 7} Mother was engaged in intensive outpatient substance abuse and mental health treatment at Talbert House until the end of March 2020 and provided a negative drug screen that month. Father provided a negative drug screen in May 2020. On June 25, 2020, Mother tested positive for methamphetamine; Father provided a negative drug screen.

{¶ 8} On July 14, 2020, Father tested positive for methamphetamine. On July 17, 2020, during an unannounced visit to Paternal Grandmother's home, WCCS caseworker Kyla New discovered that the children were not there.[2] Paternal Grandmother advised they were swimming at Maternal Grandmother's house. However, New found the children at Father's home, unsupervised, in violation of the safety plan. New amended the safety plan and placed the children with Maternal Grandmother. However, this was a short-term solution as Maternal Grandmother's housing did not allow her to have children. After July 17, 2020, Father stopped being cooperative with WCCS.

---

2. WCCS caseworker Katherine Mullins was assigned to the children's case from January 8, 2020, to March 2020. The case was subsequently assigned to another caseworker until May 2020. On May 19, 2020, the case was assigned to WCCS caseworker Kyla New.

{¶ 9} Mother tested positive for methamphetamine on July 22, 2020. It was also discovered she had stopped attending her substance abuse and mental health treatment at Talbert House in April or May 2020 due to her work schedule. Father refused a drug screen on July 17, 2020, failed to appear for an August 2020 drug screen, cancelled a meeting with New, and failed to reschedule it. Father had also stopped attending counseling at Talbert House, finding it to be ineffective and a financial burden.

{¶ 10} On August 26, 2020, WCCS filed a complaint alleging that A.V., E.V., I.V., and O.V. were neglected children under R.C. 2151.03(A)(2) and dependent children under R.C. 2151.04(B) and (C) and moved for temporary custody. That same day, Father tested positive for methamphetamine and cocaine. Following a shelter care hearing, the safety plan was terminated and the children were placed in foster care together. Mother and Father subsequently reconciled, dismissed their divorce action, and began cohabiting.

{¶ 11} On October 21 and 28, 2020, a magistrate held an adjudicatory hearing. Mullins acknowledged that the children's basic needs were met when they lived in Father's home and that the children denied any knowledge of Father's drug use. New likewise testified that the children did well in school, their basic and medical needs were met, their housing was appropriate, and that the children denied any knowledge of their parents' drug use. New further testified she had no personal knowledge that Father and Mother used drugs around the children.

{¶ 12} Mother acknowledged that drugs are illegal, admitted she was headed toward a serious drug problem from January to August 2020, and testified that the parents' substance abuse issues could have impacted the children, "thank God that it didn't." She further testified that a caregiver's drug use would be a concern because it is not safe, "things happen." Mother denied using drugs when the children were present. She admitted she

had not successfully completed any drug treatment program since the inception of the case but represented she was once again in a treatment program at the time of the October 28, 2020 hearing. Mother testified she was no longer using drugs.

{¶ 13} Father testified that he used methamphetamine multiple times and cocaine twice since October 2019. He admitted smoking methamphetamine in the garage two or three times when the children were asleep and he was the sole caregiver. He further admitted having methamphetamine brought to his home but denied the children were present. Father denied having drugs or drug paraphernalia in his home, denied using drugs in the children's presence, and testified they have never seen him use drugs. Father characterized his drug use as "recreational" and "social" and acknowledged that methamphetamine and cocaine were illegal and not appropriate to use. Father denied having a drug problem, being a drug addict, or needing counseling. Moreover, he did not think there was a concern with his drug use or his ability to parent or protect the children. Father testified he no longer uses drugs and has consistently tested negative since early September 2020.

{¶ 14} On November 2, 2020, the magistrate issued a decision finding by clear and convincing evidence that A.V., E.V., I.V., and O.V. were dependent children under R.C. 2151.04(C) and dismissing the remaining neglect and dependency allegations under R.C. 2151.04(A)(2) and R.C. 2151.04(B). The magistrate found that the state had established dependency under R.C. 2151.04(C) because Father and Mother used illegal drugs. The magistrate noted the parents' lack of insight into their chronic drug use and need for treatment. The magistrate characterized Father and Mother as drug addicts because they continued to use drugs knowing they would be tested and despite repeatedly suffering adverse consequences, such as being ordered to undergo substance abuse treatment for

violating a probation condition, WCCS's involvement, and losing physical custody of the children. The magistrate noted that the parents' inability to recognize they were drug addicts and needed treatment was "beyond concerning." The magistrate determined that the parents' drug use carried "an inherent risk to the safety of the children," which was "even greater when the use of drugs like Methamphetamine occurs in the home." The magistrate cited Father's use of methamphetamine in the garage while the children were home and the children's inability to respond to an emergency such as an overdose.

{¶ 15} Father filed objections to the magistrate's decision, arguing that the state failed to show the parents' drug use had an adverse impact on the children. On March 9, 2021, the juvenile court overruled Father's objections and adopted the magistrate's decision as an order of the juvenile court. The court found that "[t]estimony presented [at the adjudication hearing] amounted to a legitimate risk of harm and therefore there was sufficient evidence for a finding of dependency under R.C. 2151.04(C)." In particular, the juvenile court noted (1) the parents' lack of insight into their drug problem and need for treatment and their "continuing to test positive for illegal substances" at the time the complaint was filed, (2) the parents' decision "to abuse drugs despite the risk of harmful consequences. This is the very definition of drug addiction," and (3) the fact "the children are placed in an unsuitable environment when their caregiver is under the influence of methamphetamine. * * * Mother and Father's actions contributed to the children's environment, and, as such, warranted the State's intervention to assume the children's guardianship."

{¶ 16} Father appeals, pro se, the dependency adjudication, raising two assignments of error.

{¶ 17} Assignment of Error No. 1:

{¶ 18} WHETHER THE FACTS PRESENTED CONSTITUTE CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN WERE DEPENDENT PURSUANT TO R.C. §2151.04(C).

{¶ 19} Father argues the juvenile court erred in adjudicating A.V., E.V., I.V., and O.V. dependent children under R.C. 2151.04(C). Father asserts that the state failed to prove that the parents' substance abuse issues had an adverse impact upon the children warranting state intervention.

{¶ 20} "The state bears the burden of proof of establishing that a child is abused, neglected, or dependent." *In re L.H.,* 12th Dist. Warren Nos. CA2018-09-106, CA2018-09-109 thru CA2018-09-111, 2019-Ohio-2383, ¶ 20. A juvenile court's determination that a child is dependent must be supported by clear and convincing evidence. R.C. 2151.35(A); *In re T.B.,* 12th Dist. Fayette No. CA2014-09-019, 2015-Ohio-2580, ¶ 12. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.*

{¶ 21} R.C. 2151.04(C) defines a "dependent child" as any child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" "[T]he date on which dependency existed must be alleged in the complaint, and the trial court must determine that the circumstances which support a finding of dependency existed as of the date or dates alleged in the complaint." *In re N.J.*, 12th Dist. Warren Nos. CA2016-10-086, CA2016-10-090, and CA2016-10-091, 2017-Ohio-

7466, ¶ 27. Thus, the juvenile court must decide the issue of dependency as of the date or dates specified in the complaint, and not as of any other date. It follows that the conduct and actions of Father and Mother in testing negative and engaging in substance abuse treatment after August 26, 2020, the date the complaint was filed, are not relevant to the issue of dependency.

{¶ 22} The determination that a child is dependent under R.C. 2151.04(C) focuses on the child's condition or environment, and not on the parent's fault. *In re Riddle*, 79 Ohio St.3d 259, 263, 1997-Ohio-391; *In re M.W.*, 12th Dist. Warren Nos. CA2020-03-018 and CA2020-03-019, 2021-Ohio-1129, ¶ 13. Dependency under R.C. 2151.04(C) requires "evidence of conditions or environmental elements adverse to the normal development of the child." *In re M.W.* at ¶ 13; *In re E.R.*, 9th Dist. Medina No. 05CA0108-M, 2006-Ohio-4816, ¶ 13. "[A]ctual harm to a child is not necessary. Rather, circumstances giving rise to a legitimate risk of harm may suffice to support an adjudication of dependency under R.C. 2151.04(C)." *In re N.J.* at ¶ 20. A court may consider a parent's conduct under R.C. 2151.04(C) "solely insofar as that parent's conduct forms a part of the environment of [the] child." *In re Burrell*, 58 Ohio St.2d 37, 39 (1979). "As a part of the child's environment such conduct is only significant if it can be demonstrated to have an adverse impact on the child sufficiently to warrant intervention." *Id.* "That impact cannot be simply inferred in general, but must be specifically demonstrated in a clear and convincing manner." *Id.*

{¶ 23} After a thorough review of the record, we find that the juvenile court's adjudication of A.V., E.V., I.V., and O.V. as dependent children under R.C. 2151.04(C) is not supported by clear and convincing evidence because WCCS failed to present evidence that the parents' drug use adversely impacted the children in any way.

{¶ 24} A dependency finding based upon a parent's use of an illegal substance or

the abuse of a legal substance under R.C. 2151.04(C) requires some evidence that the environment of the children has been affected in some negative way by the behavior of the parent. *In re O.H.*, 9th Dist. Summit No. 25761, 2011-Ohio-5632, ¶ 9. The state is not warranted in assuming guardianship of a child under R.C. 2151.04(C) without clear and convincing evidence that a parent's drug use has an actual adverse impact on the child. *In re V.R.*, 9th District Summit No. 23527, 2008-Ohio-1457, ¶ 20. The magistrate determined that the children were dependent because the parents' drug use carried "an inherent risk to the safety of the children." In turn, the juvenile court found that the children were dependent because "Mother and Father's actions contributed to the children's environment," thereby "creat[ing] a substantial risk to their wellbeing." Neither the magistrate's decision nor the juvenile court's judgment entry identified any actual adverse impact upon the children as a result of the parents' drug use, and there was no such evidence presented here. We do not dismiss the juvenile court's concerns out of hand but must be cognizant of the supreme court's admonition that the adverse "impact cannot be simply inferred in general, but must be specifically demonstrated in a clear and convincing manner." *In re Burrell*, 58 Ohio St.2d at 39.

{¶ 25} It is undisputed that between the time WCCS became involved and the day it filed the dependency complaint, both Father and Mother continued to abuse illegal drugs, despite knowing they would be tested and the adverse consequences of a positive test. In spite of his chronic use of methamphetamine and the fact he admitted smoking it in the garage a couple of times when the children were asleep and he was the only adult present, Father denied having a drug problem or needing counseling. Neither parent successfully completed their substance abuse treatment program at Talbert House. We agree with the juvenile court's characterization of methamphetamine, cocaine, and opioids as more

dangerous than other drugs such as marijuana and alcohol. However, this does not mean that the mere use of such substances and a parent's status as a drug abuser, absent any evidence of an adverse impact upon the children or their environment, may serve as the basis of a dependency adjudication under R.C. 2151.04(C).

{¶ 26} At the adjudicatory hearing, both caseworkers testified that the children's needs were met, their home was appropriate for them, they were doing well in school, and they had no knowledge that Father and Mother were using drugs. The children were current with their medical and dental appointments. The parents' testimony indicated they were both employed; there was no evidence their income was insufficient to support the children. Father denied having drugs or drug paraphernalia in his home, denied using drugs in the children's presence, and testified they have never seen him use drugs. Mother denied using drugs when the children were present. Their testimony was not rebutted by WCCS. There is no evidence the parents were under the influence of drugs when they were in the children's presence, much less in a state of such acute intoxication that they were incapable of caring for the children or presented a danger to them. There was no evidence presented as to the amount of drugs used by the parents, nor was there any evidence that their drug use impaired their parenting or adversely impacted the children in any way.

{¶ 27} Mullins generally testified about several possible ramifications of parental substance abuse, such as being involved in the criminal justice system, losing one's home and relationships, and being unable to meet the basic needs of children, but conceded those ramifications were not present here. Likewise, New generally testified that a parent's drug use is concerning because it could alter the parent's motor skills and change the way the parent reacts to situations. Neither caseworker identified specific examples of actual adverse impact on the children as a result of the parents' drug use.

{¶ 28} We recognize that a parent's drug use may or can result in environmental risks to his or her children. However, to warrant state intervention under R.C. 2151.04(C), a negative consequence must be shown "to have an adverse impact upon the child[.] That impact cannot be simply inferred in general, but must be specifically demonstrated in clear and convincing manner." *In re Burrell*, 58 Ohio St.2d at 39. Such was not the case here as the record is devoid of any evidence demonstrating that Mother's and Father's drug use had an adverse impact on their children. Without some evidence that the children's environment has been affected in some negative way by Mother's and Father's drug use, there is no clear and convincing evidence of dependency.

{¶ 29} We note that WCCS cites opinions from this court involving a parent's drug use and in which we upheld a dependency adjudication under R.C. 2151.04(C). *See In re N.J.*, 2017-Ohio-7466; *In re L.H.*, 2019-Ohio-2383; and *In re Y.R.*, 12th Dist. Warren No. CA2020-09-057, 2021-Ohio-1858. However, all three cases had some other predicate showing dependency that is not present here. *In re N.J.* (the children were at risk of physical abuse and were exposed to the physical abuse of a sibling); *In re L.H.* (father smoked marijuana in the children's presence and bragged about physically abusing the mother and the children); *In re Y.R.* (mother had multiple ongoing mental health issues; the child was struggling with mental health issues, had recently engaged in self-harm, and had recently struck a student at school). As discussed above and in contrast to these cases relied upon by the state, caseworkers Mullins and New each testified that the children's needs were being met and neither identified any adverse environmental conditions resulting from Father's and Mother's drug use.

{¶ 30} This court does not condone a parent's use of an illegal substance or abuse of a legal substance, and certainly does not condone Father's and Mother's use of

methamphetamine, cocaine, and opioids. Their actions regarding drug use and substance abuse treatment are inappropriate and unsalutary. However, given the statutory scheme governing the adjudication of dependency and parents' constitutional right to raise their children, and without any evidence that Father's and Mother's drug use had an actual adverse impact on their children, WCCS failed to establish that A.V., E.V., I.V., and O.V. were dependent children under R.C. 2151.04(C). *See In re R.S.*, 9th Dist. Summit No. 21177, 2003-Ohio-1594; *In re Z.P.*, 5th Dist. Stark No. 2008CA00209, 2009-Ohio-378; *In re D.H.*, 9th Dist. Summit No. 25095, 2010-Ohio-2998.

{¶ 31} In light of the foregoing, the juvenile court erred in adjudicating A.V., E.V., I.V., and O.V. dependent children under R.C. 2151.04(C). We therefore reverse and vacate the juvenile court's adjudication of all four children as dependent children under R.C. 2151.04(C). Father's first assignment of error is sustained.

{¶ 32} Assignment of Error No. 2:

{¶ 33} PROCEDURAL DUE PROCESS SAFEGUARDS REQUIR[E] THAT FATHER HAS A FUNDAMENTAL RIGHT TO THE CARE, CUSTODY, AND CONTROL OF HIS CHILDREN AND THE DECISION OF THE COURT CONFLICTS WITH THE BEST INTEREST OF THE CHILDREN.

{¶ 34} Father argues he was denied due process because (1) he was forced to sign the amended safety plan which removed the children from Paternal Grandmother's custody and placed them with Maternal Grandmother, (2) the juvenile court denied his motion to continue the shelter care hearing, and (3) as a result, he was not represented by counsel at the hearing. Father further argues he was denied due process when the children were removed from his custody based upon his liberty interest in the care and custody of his children.

{¶ 35} Juv.R. 40(D)(3)(b)(iv) provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." Objections to a magistrate's decision must be specific and state with particularity all grounds for objection. Juv.R. 40(D)(3)(b)(ii). Failure to file specific objections is treated the same as the failure to file any objections. *In re D.R.*, 12th Dist. Butler No. CA2009-01-018, 2009-Ohio-2805, ¶ 29. This court has ruled that where a party fails to expressly raise a claim of plain error on appeal, we need not consider whether plain error exists. *In re K.P.R.*, 197 Ohio App.3d 193, 2011-Ohio-6114, ¶ 10 (12th Dist.).

{¶ 36} Although Father filed objections to the magistrate's decision, he did not specifically raise the issues above and does not claim plain error in his brief. He is therefore precluded from raising these issues on appeal. While Father claims plain error in his reply brief, doing so does not properly bring the issue before this court for review. *See Hunters Trail Acquisitions, L.L.C. v. Stasik*, 9th Dist. Summit No. 29620, 2021-Ohio-2224; *Nemeth v. Nemeth*, 11th Dist. Geauga No. 2007-G-2791, 2008-Ohio-3263; *Oakmont Motors v. Ohio Motor Vehicle Dealers Bd.*, 7th Dist. Columbiana No. 02 CO 31, 2003-Ohio-1238. The reply brief is merely an opportunity to reply to the brief of the appellee, and is not to be used by an appellant to raise new assignments of error or new issues for review. *See Baker v. Meijer Stores Ltd. Partnership*, 12th Dist. Warren No. CA2008-11-136, 2009-Ohio-4681, ¶ 17; App.R. 16(C); Loc.R. 11(A)(3). Accordingly, Father has forfeited these issues on appeal.[3]

---

3. For the same reason, we decline to consider Father's new argument in his reply brief that his attorney was ineffective for failing to raise certain issues in the objections to the magistrate's decision. We recognize that Father is acting pro se in this appeal. However, Father is still required to comply with the juvenile rules. *In re C.B.*, 12th Dist. Clermont No. CA2013-12-094, 2014-Ohio-3784, ¶ 13. "Pro se litigants are expected, as attorneys are, to abide by the relevant rules of procedure and substantive laws, regardless of their familiarity

- 13 -

{¶ 37} Father's second assignment of error is overruled.

{¶ 38} Judgment reversed.

PIPER, P.J., and BYRNE, J., concur.

---

with them." *In re J.A.M.,* 12th Dist. Butler No. CA2010-07-174, 2011-Ohio-668, ¶ 17. A pro se litigant must accept the results of his own mistakes and errors. *Id.*