[Cite as *In re A.P.*, 2022-Ohio-3181.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| IN RE: | : | CASE NO. CA2022-01-002 |
| A.P. | : | O P I N I O N |
| . | | 9/12/2022 |
| | : | |
| | : | |
| | : | |
| | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 21-D000074

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Robert F. Benintendi, for appellant.

**M. POWELL, P.J.**

{¶ 1} Appellant ("Mother") appeals a decision of the Warren County Court of Common Pleas, Juvenile Division, adjudicating her daughter dependent.

{¶ 2} Mother and Father are the parents of the child at issue, Arlette, who was born on March 29, 2020. Father is not a party to this appeal. Mother has two other children who reside with her, a 15-year-old son and a 10-year-old daughter. Father also has another

child, a 14-year-old daughter, Jasmine.[1]  On occasions, Jasmine would reside with Mother, even if Father did not.

{¶ 3}  On September 28, 2021, the Warren County Children Services Board (the "Agency") filed a complaint alleging that Arlette was a dependent child under R.C. 2151.04(B) and (C).  The complaint alleged that: Mother and Father reportedly used cocaine while home with the children; while Mother, Father, and the four children vacationed together in Florida in August 2021, Father and Jasmine "were involved in a domestic dispute," Jasmine suffered physical injury, and Father was arrested; Mother subsequently fled from Florida with Arlette and refused to disclose her location because she "was scared of Father finding them"; upon Mother's return to Ohio with Arlette, the Agency was unsuccessful in its attempt to see the child; during a September hearing regarding Father's parenting time with Arlette, Father reported he had frequent visits with Arlette, always at Mother's home; and Mother informed the Agency she had no intention of informing the Agency about Father's visits with Arlette.  The complaint stated the Agency had "significant concerns with Mother's protective capacities due to ongoing domestic violence and the substance abuse history with Mother and Father."

{¶ 4}  An adjudicatory hearing was conducted before a magistrate over three days in December 2021.  On December 20, 2022, the magistrate adjudicated Arlette a dependent child under R.C. 2151.04(B) and (C).  As part of her decision, the magistrate made the following findings of fact:

- Mother and Father were in an intermittent relationship for three or four years, which was marked by a "cycle of leaving and coming back";

- The Agency initially opened a case in 2019 following Father's attack on Mother; the

---

1. For privacy and readability, we refer to the child at issue and Father's other daughter using fictitious names. In other words, Arlette and Jasmine are not the children's real names.

case was closed eight or nine months later;

- The Agency received another referral in May 2021 after Mother made Father and Jasmine leave the home. The Agency initiated a safety plan pursuant to which Jasmine was placed with Mother and was not to have any contact with Father. Despite the safety plan, Mother admitted she allowed Father to stay in her home "a few times"; a caseworker observed Father in Mother's home during a June 2021 home visit, and Father engaged into a verbal altercation during the visit; the caseworker advised Father to stay with his parents and leave Jasmine with Mother;

- In July 2021, Father tested positive for cocaine and THC;

- In August 2021, Mother, Father, and all four children took a Florida vacation and stayed in the same condominium. During this vacation, Father and Jasmine were involved in a physical altercation in the presence of the other three children and in Mother's absence. As a result of the altercation, Jasmine suffered a head wound that required staples. During the altercation, Arlette was nearly struck by a bowl that had been thrown. The altercation "was significant enough for [Mother's son] to video it; and scary enough that Mother's [other] daughter ran out of the home to find Mother and get her back to the condominium for help." Father was arrested and charged with a felony offense. Mother admitted she knew the children were not to be left alone with Father.

- Following the incident, a plan was developed for Mother and the children to return to Ohio with Mother's former husband and father of her other daughter. However, Mother did not return to Ohio and instead drove to Oklahoma with Arlette. Mother then left for Indiana with Arlette to get away from Father.

- As a result of the Florida incident, the Agency reopened Mother's case. "Mother reported feeling unsafe; acknowledged that the previous domestic violence affected

the children and was initially willing to work with the agency. Mother indicated she wanted to move to Indiana[.]" At some point, Mother stopped answering phone calls from the Agency.

- On August 6, 2021, a caseworker went to Mother's home and observed Mother's and Father's cars in the driveway but no one answered the door. Shortly after that, there was a "For Sale" sign in the yard and a combination lock on the door. On August 11, 2021, the caseworker was able to meet with Mother and Arlette at a relative's home. "Mother was afraid Father would find out where they were staying."

- During a September 2021 hearing regarding Father's parenting time with Arlette, Mother and Father both admitted that Mother was allowing Father to visit Arlette under Mother's supervision and without a court order. Upon being confronted by a caseworker, Mother stated "she would never tell the agency that Father was seeing [Arlette]."

- Mother is a loving and caring parent. However, she is trapped in a cycle of domestic violence with Father and has been incapable of protecting Arlette from that cycle as she acknowledged she keeps allowing Father back into her life. Mother is a victim of domestic violence and "has created her children to be victims, as well. Even if Mother is doing some protective things, Father is still very much a factor."

- There is a concern that Arlette may suffer mental, emotional, and physical harm as a result. "Exposure to domestic violence is part of the assessment as repeated instances of domestic violence increase the risk of safety to the child."

{¶ 5} Mother filed objections to the magistrate's decision and requested a transcript of the adjudicatory hearing to support her objections. Mother argued that the evidence did not support the dependency adjudication because the magistrate "made certain assumptions as to the negative impact on [Arlette] including that the child was present

- 4 -

during the alleged Domestic Violence" between Father and Jasmine, and erroneously assumed that Arlette "could have heard or observed any acts of Domestic Violence." The juvenile court granted Mother's request for a transcript on December 27, 2021. The court's order required Mother to pay a $1,900 deposit for the cost of the transcript on or before January 10, 2022, and warned that "[f]ailure to pay the deposit as provided herein will result in immediate submission of the matter for decision without a transcript." On January 11, 2022, the court transcriptionist filed a notice that Mother had failed to pay the deposit as ordered. The following day, Mother moved the juvenile court for an extension of time to pay the deposit.

{¶ 6} On January 13, 2022, the juvenile court denied the motion, finding that Mother had failed to pay the deposit as ordered, and further, had waited until the January 10, 2022 deadline had passed before requesting an extension of time to pay the deposit. Therefore, the juvenile court found the request for extension to be untimely and considered Mother's objections to the magistrate's decision without the benefit of a transcript. The court then overruled Mother's objections and adopted the magistrate's decision as follows:

> Mother's Objection is factually dependent upon the testimony provided at the hearings. Without knowledge of the testimony presented, the Court must base its review upon the factual matters noted by the magistrate in her decision and the pleadings in the file. Based upon a review of the file and the Magistrate's Decision, the Court finds that there is no error of law contained in the Magistrate's Decision.

{¶ 7} Mother appeals the dependency adjudication, raising one assignment of error:

{¶ 8} THE TRIAL COURT ERRED IN ITS DECISION THAT THE MINOR CHILD WAS FOUND TO BE DEPENDENT PURSUANT TO OHIO REVISED CODE SECTION 2151.04(B) AND 2151.04(C).

{¶ 9} Mother argues the juvenile court erred in adjudicating Arlette a dependent child under R.C. 2151.04(C) because the state failed to prove "a legitimate risk of harm or

that [Arlette] suffered any negative impact" warranting state intervention as a result of the Florida physical altercation between Father and Jasmine and the alleged long history of domestic violence between Mother and Father.[2]

{¶ 10} We first determine the appropriate standard of review of the juvenile court and this court in light of Mother's failure to provide the juvenile court with a transcript of the magistrate's adjudicatory hearing or an affidavit of the evidence in support of her objections to the magistrate's decision. We note that a transcript of the adjudicatory hearing was submitted with the appellate record.

{¶ 11} Juv.R. 40(D)(3)(b)(iii) provides that "[a]n objection to a factual finding, whether or not specifically designated as a finding of fact under Juv.R. 40(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." The duty to provide a transcript or affidavit rests with the party objecting to the magistrate's decision. *Smith v. Smith*, 12th Dist. Madison No. CA2018-02-004, 2018-Ohio-4179, ¶ 19.

{¶ 12} In the absence of a transcript or affidavit, the trial court must accept the magistrate's factual findings and limit its review to the magistrate's legal conclusions. *Id.* at ¶ 20. "When a party objecting to a referee's report has failed to provide the trial court with the evidence and documents by which the court could make a finding independent of the report, appellate review of the court's findings is limited to whether the trial court abused its discretion in adopting the referee's report." *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730, 1995-Ohio-272. Furthermore, "the appellate court is precluded from considering the transcript of the hearing submitted with the appellate

2. Although Mother's assignment of error references R.C. 2151.04(B), the argument that follows addresses only the juvenile court's adjudication of Arlette as dependent under R.C. 2151.04(C).

record." *Id.* *See also Mengel v. Mengel*, 5th Dist. Delaware No. 21 CAF 05 0022, 2021-Ohio-4166, ¶ 10-11 (when a party objecting to a magistrate's decision fails to provide the trial court with a transcript of the evidentiary hearing held before the magistrate, the factual findings of the magistrate are deemed established and may not be attacked on appeal, and the appellate court is precluded from considering the transcript of the hearing submitted with the appellate record).

{¶ 13} R.C. 2151.04(C) defines a "dependent child" as any child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"  The determination that a child is dependent under R.C. 2151.04(C) focuses on the child's condition or environment, and not on the parent's fault.  *In re M.W.*, 12th Dist. Warren Nos. CA2020-03-018 and CA2020-03-019, 2021-Ohio-1129, ¶ 13. Dependency under R.C. 2151.04(C) requires "evidence of conditions or environmental elements adverse to the normal development of the child."  *In re A.V.*, 12th Dist. Warren Nos. CA2021-04-030 thru CA2021-04-033, 2021-Ohio-3873, ¶ 22.  "[A]ctual harm to a child is not necessary.  Rather, circumstances giving rise to a legitimate risk of harm may suffice to support an adjudication of dependency under R.C. 2151.04(C)."  *Id.*  A court may consider a parent's conduct under R.C. 2151.04(C) solely insofar as it forms a part of the child's environment.  *In re Burrell*, 58 Ohio St.2d 37, 39 (1979).  A parent's conduct is only significant if it has an adverse impact on the child sufficient to warrant intervention.  *Id.* "That impact cannot be simply inferred in general, but must be specifically demonstrated in a clear and convincing manner."  *Id.*

{¶ 14} Absent a transcript or affidavit, our review is solely limited to whether the juvenile court abused its discretion in applying the law to the factual findings set forth in the magistrate's decision and in adopting the magistrate's decision adjudicating Arlette a dependent child.  We find the juvenile court did not abuse its discretion in adopting the

- 7 -

magistrate's decision and adjudicating Arlette a dependent child under R.C. 2151.04. Mother's assignment of error is overruled.

{¶ 15} Judgment affirmed.

S. POWELL and HENDRICKSON, concur.