[Cite as *State v. Marshall*, 2024-Ohio-688.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-03-036 |
| | : | O P I N I O N |
| - vs - | | 2/26/2024 |
| | : | |
| THOMAS LEE MARSHALL, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2022-05-0729

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Law Office of John H. Forg, and John H. Forg, III, for appellant.

**BYRNE, J.**

{¶ 1} Thomas Lee Marshall appeals from his convictions for rape and gross sexual imposition in the Butler County Court of Common Pleas. For the reasons described below, we affirm.

## I. Factual and Procedural Background

{¶ 2}   In June 2022, a Butler County grand jury indicted Marshall on six counts, consisting of five counts of rape (Counts One through Five) and one count of gross sexual imposition (Count Six).  The alleged victim in all counts was Marshall's daughter, "Heather."[1]

{¶ 3}   The indictment arose after Heather, by then an adult, accused her father of instructing her to touch him sexually and raping her between 2001 and 2006, when she was six to ten years old.  The matter proceeded to a jury trial.  We will summarize the key testimony presented at trial below.

### A. The State's Case

### 1. Heather's Testimony and Heather's Journal

{¶ 4}   Heather testified at trial that she was born in 1995 and that she was 27 years old.  She grew up in two different homes in West Chester and Liberty Township, Ohio.  She grew up living with her mother, father, brother, and older half-sister.  Her brother, "Adam," was four years younger than her.  He suffered from spinal muscular atrophy and low IQ.  Adam required a "lot of attention."

{¶ 5}   Heather's father—Marshall—was in charge of "bath time."  When she and Adam were very young, Marshall would give them baths at the same time.  However, when Heather turned six, Marshall began bathing her alone.

{¶ 6}   Heather testified that when she was six years old, after bath time, when she was clean, Marshall told her it was "game time."  He then put his fingers in her vagina.

{¶ 7}   Heather recalled another time when she was six years old that Marshall put his fingers in her vagina.  This again happened during bath time.  This time, Marshall was

---

1. "Heather" is a pseudonym, adopted in this opinion for purposes of preserving the victim's privacy and to improve readability.  We also use pseudonyms to refer to all individuals in this opinion who were children at the times of the offenses.  *See In re A.P.*, 12th Dist. Warren No. CA2022-01-002, 2022-Ohio-3181, ¶ 2, fn.1; *see also* Ohio Constitution, Article I, Section 10a(A)(1) (requiring that victims in the criminal and juvenile justice systems "be treated with fairness and respect for the victim's safety, dignity and *privacy*").  (Emphasis added.)

masturbating and ejaculated. Heather clarified that this was how she recalled the event as an adult, and that as a child she thought Marshall was "peeing."

{¶ 8} On another occasion during bath time, when she was six years old, Marshall again told her it was "game time." He taught her how to give him a "hand job;" that is, he taught her to use her hand to rub his penis.

{¶ 9} Heather recalled being in her bedroom when she was seven years old. Marshall told her it was "game time." He told her to lick his penis. Then he told her to put his entire penis in her mouth. She recalled feeling like she could not breathe and that she choked on his penis.

{¶ 10} In a separate incident that occurred in the bathroom when Heather was seven years old, Marshall put his penis in Heather's mouth. He ejaculated inside her mouth and she spit his semen out. He slapped her for spitting it out.

{¶ 11} When she was nine or ten years old, Marshall told Heather that they would play "special game time." After she bathed, he had her stand on the ledge of the tub, bent over and facing away from him, with her hands on the wall. He then covered her mouth with his hand and put his penis inside of her vagina. It was very painful and she screamed.

{¶ 12} "Special game time" also happened in her bedroom. Heather recalled that she was nine or ten years old and lying on her back in bed. Marshall told her that they were going to play "special game time," and then he put his penis in her vagina. Again, it was painful.

{¶ 13} Heather testified that during all these events, her mother was not in the home or was not around. These events occurred in one of the two homes that Heather lived in between the ages of six and ten and happened only in the bathroom and in her bedroom.

{¶ 14} When she was ten years old, Heather asked her mother if she could start taking showers, by herself. Her mother agreed. Marshall no longer abused her after she

started showering on her own.

{¶ 15} Heather testified that she regularly journaled throughout her childhood and that she recalled journaling about the abuse when it was occurring. She identified a journal that she kept during the time the abuse was ongoing. The journal covered the period of February 2004 (when Heather was eight years old) to January 2007 (when she was 11 years old). State's Exhibits 17 through 60 consisted of individual pages of that journal.

{¶ 16} Certain pages of the journal exhibits were partially redacted. For example, certain pages of the journal exhibits only include the date, the salutation "Dear Diary," and a sign-off, such as "Love, Heather," with the entire content of the journal entry redacted. In some instances, only part of the journal entry was redacted. The state questioned Heather as to the content of each page of the journal.

{¶ 17} Exhibit 21 was a journal entry dated February 29, 2004, when Heather would have been eight years old, almost a nine-year-old.[2] In the entry, Heather wrote about winning a state championship for swimming, that Marshall bought her a milkshake afterwards, that her mother said she could have anything she wanted, and that she wanted an alarm clock.

{¶ 18} The state also introduced various photographs depicting Heather during the same period when the abuse was occurring. Relevant to Exhibit 21, Exhibits 7 and 10 are photographs depicting Heather holding or displaying swimming trophies. During her testimony, Heather estimated that she was six and eight years old in these two photographs.

{¶ 19} In Exhibit 22, a journal entry dated March 2, 2004, just days before her ninth birthday, Heather journaled about the abuse. She wrote,

> Dad and I played game time again. Mama went to the store and
> he tucked me in. He told me one day I will be too old for game
> time. I think game time isn't fun. Maybe 9 years old will be too

---

2. Heather was born in March 1995.

old for game time. I turn 9 in 5 days! He licked my privates again and it was gross! I also touched his privates and it got big again and then he touched it and I stopped. He always kind of pees on himself after and it's gross. Maybe when I turn 9 I'll be too old.

{¶ 20} In Exhibit 29, a journal entry dated July 3, 2004, Heather wrote again about winning an award at a swim meet. She also wrote that Marshall and her older sister were proud of her and that they went to get "McFlurrys" afterward.

{¶ 21} In State's Exhibit 30, a journal entry dated August 9, 2004, Heather wrote about school starting soon and discussed her new teacher. She wrote that a person she knew was going to be in her class. She mentioned telling that person that,

> I don't have a boyfriend any more and that's because all boys are gross except [Adam]. Especially dad is gross because he likes to do gross things during game time. * * * Dad said I'm getting better at licking his privates. I still hate it.

{¶ 22} In State's Exhibit 32, a journal entry dated October 31, 2004, Heather wrote,

> Happy Halloween! Dad made me my spongebob costume. He said tonight at game time we are playing something new. I really hate game time. Baths are not fun and I wish I could shower.

While discussing this journal entry, the state questioned Heather concerning State's Exhibit 13, which was a photograph of Heather wearing a SpongeBob SquarePants Halloween costume. Heather confirmed that this was the costume Marshall had made for her and that she was nine years old in the photograph.

{¶ 23} In State's Exhibit 33, a journal entry dated November 2, 2004, Heather wrote,

> Dad put his privates inside my privates. I think that's what they do in the movies. I thought it was fake and I bet it is because it hurts so bad. He hit me for yelling. I really hate him.

{¶ 24} In State's Exhibit 34, a journal entry dated November 29, 2004, Heather wrote,

> Dad put his privates inside mine again. This time it was in bed and not in the bath. I feel like I am dying. I don't want to live anymore maybe when I am 10 I will be too old.

{¶ 25} In State's Exhibit 36, a journal entry dated December 25, 2004, Heather wrote,

> Merry Christmas!  Mama gave me an ipod and I already put all my Michael Jackson songs on it!  I can listen to him on the bus now!

The state introduced several photographs of Heather's childhood bedroom.  These photographs depict Michael Jackson posters on the walls of the bedroom.

{¶ 26} In State's Exhibit 37, a journal entry dated March 7, 2005 (Heather's tenth birthday), Heather wrote,

> Happy birthday to me!  Mama let me stay home from school and we went to see the Robots movie!  My party was Saturday and I was in a bad mood because dad is mad at me since I told mama I want to take showers now.  Friday he gave me a bath and he covered my mouth when he did sex and I wanted to stab him.  I wanted to poke his eyes out.  I just don't like that he's mad at me now.

{¶ 27} In State's Exhibit 38, a journal entry dated April 1, 2005, Heather wrote,

> Dad hasn't really talked to me much since I started showering. He probably hates me.  Why didn't I stop baths sooner?  Am I stupid?  I hated game time so much and I didn't quit!  Dummy!

{¶ 28} In State's Exhibit 47, a journal entry dated February 20, 2006, when Heather was nearly 11 years old, she wrote about an interaction she had with "Claire," her cousin, who was about one year older than Heather:

> I watched Chicago with [Claire] and the sex scene happened and I told her I did that before and she didn't believe me.

Heather's handwriting changed to cursive in this journal entry.  When asked why she switched to cursive, Heather testified, "I grew up."

{¶ 29} In State's Exhibit 49, a journal entry dated May 15, 2006, Heather wrote,

> [Claire] made the bratz dolls have sex and I told her that's only supposed to be for making babies and she said she thought it was for fun.  Why would that be fun?  It's gross and it hurts.

{¶ 30} In State's Exhibit 54, a journal entry dated August 28, 2006, Heather wrote

about starting 6th grade.  She mentioned being in band class and that she picked the flute to play because her mom told her she would be good at it.  Relevant to State's Exhibit 54, State's Exhibit 16 is a photograph of Heather at a band concert, holding a flute.  Heather estimated that she was 11 or 12 years old in that photograph.

{¶ 31} In State's Exhibit 55, a journal entry dated September 19, 2006, Heather wrote about having a nightmare about Marshall,

> I had a nightmare last night about dad.  I woke up and I thought
> he was in my room even though he wasn't.  I hate feeling scared.
> I know I'm old enough now to not be scared but sometimes I am.
> I wish someone could help me not be scared!

{¶ 32} In State's Exhibit 59, a journal entry dated December 26, 2006, Heather wrote,

> I got my first high heels for Christmas!  They are silver and
> sparkly size 10!  I am so excited!

Relevant to State's Exhibit 59, State's Exhibit 15 is a photograph of Heather wearing pajamas and smiling, admiring the high heel shoes she is wearing.  Heather testified that this photograph was of her on Christmas with the high heels referred to in Exhibit 59.

{¶ 33} Finally, in State's Exhibit 60, a journal entry dated January 1, 2007, Heather wrote,

> I am trying my best to forget what dad did and what we did
> together but it's so hard.  I am about to go crazy.  I know that it's
> fine and I just have to be a grown up but it makes me scared.
> My new years resolution is to forget all of it.

{¶ 34} Heather testified that she never told anyone that Marshall was sexually abusing her while the abuse was occurring.  She explained that she did not tell her mother because Marshall scared her and she was afraid that she would not be believed.

{¶ 35} On direct examination, Heather admitted to a history of lying.  She admitted making up lies about being sexually assaulted by multiple people.  But she stated that when she lied about being sexually assaulted, those lies never involved Marshall, and only

involved her "peers."

{¶ 36} Heather explained that she never lied to her mother, but that her mother would hear about her telling lies to other people. Heather explained that she would lie to her friends, who would tell their parents, who would then contact her mother. Her mother would confront her about what she had been telling her friends and she would admit to her mother that she had been lying. Heather stated that she never escalated a lie to the attention of the police.

{¶ 37} Heather stated that she began lying when she was six years old. She would lie to get sympathy and attention. Heather explained,

> all of my lies have been directly correlated to things that my dad actually had done to me. So the lies that I would tell were those same things. And that was my way of getting the sympathy and care that I needed without actually telling what was going on.

{¶ 38} Heather stated that in 2018 she told her therapist what Marshall had done to her during her childhood. Her therapist asked her to look for the journal she kept during the years she was abused. Heather went to her mother's house and found the journal in a closet. She eventually reported Marshall's crimes to the police in early 2022.

{¶ 39} On cross-examination, Heather admitted that she once told a "story" to someone about engaging in oral sex with her father outside of school in the daytime. She also admitted that, in a text message, she said that Marshall had anal sex with her and also with Claire, when both girls were ten years old. She also admitted journaling about anal sex and journaling that Claire told her about having anal sex with Marhsall.

{¶ 40} Heather admitted that when she testified at the grand jury, she did not say that Marshall had had anal sex with her or that any sexual acts took place outside of the two homes she grew up in. She also confirmed not telling the investigating detective about anal sex with Marshall. She did confirm telling the investigating detective that Claire had been

sexually abused as a child.

{¶ 41} Heather admitted that she lied for attention both as a child and as an adult. She admitted that, as recently as 2015, she had journaled that she needed to stop lying. She agreed that "in the last years" she had spoken with her therapist about trying not to lie. She agreed that in therapy, she had spoken about lying to a friend in 2020, and then immediately calling the friend back, telling the truth, and resolving the situation.

{¶ 42} Heather stated that she got an adrenaline rush from lying. Heather admitted that she still had urges to lie, but explained that it was a coping mechanism that she built up over the course of her lifetime. Heather admitted that she was still "dealing" with the issue of the urge to lie, but stated that, "I have not lied." (In context, it appears that Heather was referring to having "not lied" during her trial testimony.)

### 2. Heather's Mother's Testimony

{¶ 43} Heather's Mother, Julie, testified about Adam's physical and cognitive disabilities. She first realized that he was developmentally delayed when he was about one year old, when Heather would have been five years old. Adam had a neuromuscular genetic disease that was "devastating." He had never walked or crawled. He required 24-hour care seven days a week for feeding, dressing, and bathing. Julie explained that the process of getting Adam up in the morning took up to two hours. It involved getting him out of bed, showering him, dressing him, and then feeding him. Julie provided all day and night care to Adam until sometime in 2012, when Adam started receiving night nursing assistance. She said that Adam took "so much of [her] time." When questioned, Julie agreed that, because of Adam's disabilities, Heather would act like she was not getting enough attention from her.

{¶ 44} Julie also testified as to Marshall's role in the household. She said he helped, though he travelled "a lot" for his job. Marshall would handle the "nighttime routine" of

getting Adam ready for bed. With regard to Heather, Marshall was "usually" in charge of bath time at night. She recalled that Heather and Adam would take baths together "on occasion" but "then she [Heather] started bathing by herself." Julie remembered Heather requesting at some point to take showers. When asked why that stood out in her mind, Julie responded, "I just thought it was a little -- not odd -- I guess * * *."

{¶ 45} Julie agreed that Heather had a problem with lying. Those lies included serious matters, such as sexual assault. But Julie stated that Heather would always "come clean" to her about those lies.

### B. The Defense's Case

{¶ 46} Claire, Heather's cousin, was the only witness called by the defense. Claire testified that when she was young, she and Heather were very close. She would sleepover at Heather's home frequently. She also saw Marshall, "a lot." She denied seeing Marshall do anything sexual with Heather.

{¶ 47} Claire denied that Heather ever told her that Heather had sex when she was between six and ten years old. Claire denied that Heather told her that Heather had anal sex. Claire also denied telling Heather that Claire had anal sex when she was ten years old.

{¶ 48} Claire denied ever telling Heather that she had sexual relations with Marshall. When asked, "Did you ever get abused by or have sex with your uncle?" Claire responded, "I have never been sexually abused by anybody in my entire life."

### C. The Verdicts

{¶ 49} The jury failed to return verdicts on Counts One and Two of the indictment, which related to alleged incidents of rape that occurred between 2001 and 2002 (Count

One) and 2001 and 2003 (Count Two).[3] The jury returned guilty verdicts on the remaining counts of the indictment, which related to incidents of rape and gross sexual imposition that occurred between 2002 and 2004 (rape, Count Three), 2004 and 2006 (rape, Count Four), 2004 and 2006 (rape, Count Five), and between 2001 and 2006 (gross sexual imposition, Count Six). The court sentenced Marshall to a prison term. Marshall appealed, raising one assignment of error.

## II. Law and Analysis

{¶ 50} Marshall's sole assignment of error states:

> THE TRIAL COURT ERRED IN CONVICTING THOMAS LEE MARSHALL OF RAPE/GROSS SEXUAL IMPOSITION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### A. Marshall's Argument on Appeal

{¶ 51} Marshall's sole assignment of error states that he is challenging the weight of the evidence supporting his convictions on Counts Three through Six. Consistent with his assignment of error, Marshall's argument on appeal is that Heather was not a credible witness. This is a weight-of-the-evidence argument. *See State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66 (a court considering a weight of the evidence challenge considers the credibility of the witnesses).

{¶ 52} But after introducing his weight-of-the-evidence argument, Marshall's brief shifts gears and refers to sufficiency of the evidence. The brief states, "A criminal conviction challenged on such grounds shall stand so long as there exists sufficient evidence in the record 'which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt'—that is, without any degree of uncertainty." This is a quotation from a discussion of sufficiency of the evidence in *State v. Eley*, 56 Ohio St.2d 169, 172 (1978),

---

3. There were specific dates alleged in the indictments, correlated to Heather's age (March 7, 2001 through March 6, 2002, for example). But for purposes of this opinion, those dates are unimportant.

which Marshall cites. This quotation and the citation to *Eley* seem out of place, given that Marshall just stated in the assignment of error and the paragraph above that he was making a weight-of-the-evidence argument. Marshall's next—and only other—citation, to *State v. Thompkins*, 78 Ohio St.3d 380 (1997), does not clarify the matter, as Marshall did not include a pinpoint citation clarifying whether he meant to cite the discussion of weight-of-the-evidence or sufficiency in the *Thompkins* opinion.

{¶ 53} In the remainder of his brief, Marshall did not claim that the state failed to submit evidence to prove any element of any of the four counts of which he was convicted and specifically conceded that the convictions were premised on Heather's testimony and her childhood journal. He did not present any other argument relating to the sufficiency of the evidence supporting his convictions. Accordingly, we conclude that Marshall's brief references to sufficiency were in error, and that Marshall only makes a weight-of-the-evidence argument on appeal. We therefore do not address the matter of the sufficiency of the evidence supporting Marshall convictions, other than to note that our holding—discussed below—that Marshall's convictions were not against the manifest weight of the evidence would also be dispositive of any sufficiency argument that Marshall may have brought. *State v. Zitney*, 12th Dist. Clinton No. CA2020-06-007, 2021-Ohio-466, ¶ 15.

**B. Standard of Review**

{¶ 54} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed, and a new trial ordered. *Graham*, 2009-Ohio-2814 at ¶ 66.

{¶ 55} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *Zitney* at ¶ 15.

### C. Analysis

{¶ 56} Marshall argues that Heather's testimony and Heather's childhood journal were unreliable. He points out that Heather had an admitted history of lying about sexual abuse, including lying about sexual abuse while journaling. He argues that given Heather's credibility issues, the jury lost its way in believing her and his convictions were therefore against the manifest weight of the evidence.

{¶ 57} We have reviewed the record, and we do not agree that the jury lost its way. As described above, Heather testified to acts of rape and gross sexual imposition committed by Marshall at various time while she was between the ages of six and ten. The jury believed Heather as it related to the allegations of Counts Three through Six. A conviction is not against the manifest weight of the evidence because the jury chooses to believe the state's witness. *State v. McMullen*, 12th Dist. Butler Nos. CA2005-09-414, CA2005-10-427, and CA2005-10-429, 2006-Ohio-4557, ¶ 29.

{¶ 58} The issues concerning Heather's credibility were extensively laid out before the jury during both her direct examination and her cross-examination. Without reservations, Heather admitted to her history of lying. She also explained that she only lied about her peers and that she always admitted lying to her mother when confronted. The

- 13 -

jurors were aware of Heather's propensity to lie even into her adulthood and they were aware that she continued to struggle with lying and had sought professional help for the issue.  These facts were known to the jury and would have been weighed by the jury in assessing the truthfulness of her testimony concerning Marshall's actions.

{¶ 59} But contrary to Marshall's argument, Heather's testimony was credible and convincing, and its credibility was bolstered by a crucial and compelling piece of corroborating evidence, her childhood journal.  Those journal pages, written in the language of a child, provided a contemporaneous recollection of abuse by Marshall consistent with her statements as an adult.

{¶ 60} The journal is notable because it consists of Heather simultaneously documenting the abuse while at the same time documenting the ordinary but memorable aspects of her young life, such as winning athletic awards, receiving presents, a memorable Halloween costume, and happenings at school.  And the photographs introduced at trial corroborated many of these ordinary events, such as the photographs of her with trophies, wearing a custom-made Halloween costume, and playing a flute.

{¶ 61} The jury could conclude that the fact that the photographs corroborate the innocuous aspects of Heather's journal lent credence to the conclusion that her documentation of the abuse was also truthful.  That is, it would be unexpected for Heather to truthfully record the regular events of her life, while fabricating ongoing sexual molestation by her father.  Moreover, the fact that this was a personal, and clearly very private journal, indicates less of a likelihood of lying.[4]  That is:  why would Heather lie to herself about what she was journaling in private?

{¶ 62} The child-like language used by Heather to describe the abuse is consistent

---

4. The first page of the journal indicates that the journal belongs to Heather and states, in her handwriting, "DO NOT TOUCH!  If you open this you will die[.]"

with what would be expected from a child attempting to describe sexual molestation when the child does not realize that molestation is occurring, or even what sex is. It was clear from her writing that Heather recognized that "game time" was something different than ordinary father/daughter behavior and she was uncomfortable with it, but she did not realize how terribly wrong it was until she was older and more mature. Notably, Heather began writing in cursive in 2006, which she described at trial as a change connected with her "growing up." It was around this time that she documented having nightmares about the abuse. The transition in her awareness of the wrongness of "game time" in the journal is apparent.

{¶ 63} The fact that Marshall dubbed the abuse "game time" also lends credibility to Heather's claims. It is not surprising that a child abuser might attempt to use a phrase such as "game time" to confuse or distract a child into believing that what was happening was not inappropriate or harmful but rather a fun "game."

{¶ 64} The trajectory of the abuse was also realistic. As testified to by Heather, the abuse began with digital penetration when she was very young, evolved to fellatio, and ultimately progressed to vaginal penetration, which Marshall called "special game time." The progressive nature of the abuse as described by Heather at trial was believable and was corroborated by Heather's journal.

{¶ 65} The jurors also heard from Julie, Heather's mother, about how she was totally preoccupied caring for Adam and relied upon Marshall to handle the "nighttime routine" and specifically relied upon him to bathe Heather. This dynamic lent itself to Marshall being alone with Heather and enabled him to prey on Heather. Julie also corroborated Heather's testimony and the journal entries indicating that that she asked Julie if she could start taking showers before the abuse stopped.

{¶ 66} In sum, Heather's history of lying was laid before the jury and so they were

free to credit her testimony with the weight it deserved. However, they were also presented with substantial other corroborating evidence. Given the testimony and other evidence, we conclude that the jurors did not lose their way in finding Marshall guilty of Counts Three through Six.

{¶ 67} Within this assignment of error, and ostensibly related to Marshall's credibility argument, Marshall also argues that error occurred because the jurors were not permitted to see portions of the journal in which Heather allegedly lied about other sexual acts.

{¶ 68} This argument is more in line with an evidentiary challenge than a manifest weight challenge. However, Marshall has not assigned error to the trial court's decision to admit the journal into evidence with redactions. Nor are we aware of an objection at trial or during the proceedings with respect to these redactions.[5]

{¶ 69} Regardless, Marshall contends on appeal that the prosecution submitted pages from Heather's journal that corroborated her allegations that Marshall had sexually abused her, but redacted portions of the journal that included allegations that she had sex in public with Marshall, anal intercourse with Marshall, and that Marshall had sexually abused Claire. Marshall concedes that Heather was questioned about these matters on cross-examination and admitted to lying about them but complains that "the jury was unable to review those redacted pages."

{¶ 70} The unredacted journal was made part of the record but not introduced into evidence at trial. We have reviewed the unredacted journal. Based on this review, we conclude that the redacted portions of the journal exhibits do not contain the false allegations that Marshall discusses above. Instead, the redacted portions of the journal

---

5. The record reflects that Marshall's defense counsel moved in limine to exclude the entire journal on hearsay grounds, based on lack of relevancy due to lack of reliability, and due to prejudicial impact. The court overruled that objection. Counsel renewed that objection at trial before the admission of the journal entries, which was again overruled. Marshall did not appeal this issue.

essentially consist of Heather discussing events in her life that were irrelevant to the case.

{¶ 71} During her cross-examination, Heather did admit journaling about certain allegations that were untrue, but she did not specify *when* she journaled about those matters and did not state that she wrote about these matters in the journal discussed at trial.

{¶ 72} For these reasons, Marshall's assertion that the redacted pages of Heather's childhood journal contained the false statements referenced above is simply incorrect.

{¶ 73} Regardless, Marshall does not explain how he was prejudiced. As he admits, the jurors were aware of the false statements through Heather's cross-examination. The fact that Heather may have lied about these incidents was therefore known to the jury and would have been weighed in assessing her truthfulness. Marshall has not demonstrated the jury lost its way in this regard.

### III. Conclusion

{¶ 74} Substantial evidence corroborated Heather's testimony, which the jury was free to credit or not, and we find that Marshall's convictions were supported by the greater weight of the evidence. We overrule Marshall's sole assignment of error.

{¶ 75} Judgment affirmed.

PIPER, P.J., and M. POWELL, J., concur.