[Cite as *In re M.W.*, 2021-Ohio-1129.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| | | CASE NOS. CA2020-03-018 |
| M.W., et al. | : | CA2020-03-019 |
| | : | O P I N I O N |
| | | 4/5/2021 |
| | : | |
| | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 19-D000126

Mark W. Raines, 246 High Street, Hamilton, Ohio 45011, for appellant

David P. Fornshell, Warren County Prosecutor, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Andrea Ostrowski, 20 S. Main Street, Springboro, Ohio 45066, for CASA

Carol Garner, 9435 Waterstone Blvd., #140, Cincinnati, Ohio 45249, for father

**M. POWELL, J.**

{¶ 1} Appellant ("mother") appeals the decisions of the Warren County Court of Common Pleas, Juvenile Division, adjudicating her children dependent pursuant to R.C. 2151.04(C). For the reasons discussed below, we affirm the juvenile court's decisions.

{¶ 2} Mother is the parent of the M.W., born in September 2012, and N.W., born in February 2014. In November 2019, appellee, Warren County Children Services ("WCCS"), filed complaints alleging that M.W. and N.W. were dependent children. An adjudicatory hearing on the complaints was conducted on February 17, 2020. At the hearing, WCCS called four witnesses to testify: mother, mother's boyfriend, and two investigative caseworkers from the agency, Vanessa Henson and Kevin Hogg. Mother did not call any witnesses to testify but had seven exhibits admitted into evidence. The following facts were adduced at the hearing.

{¶ 3} In January 2019, WCCS received a report from a Kentucky children services agency concerning allegations that mother was using drugs. The report indicated that mother had moved from Kentucky to Mason, Ohio while the Kentucky agency was conducting its investigation. In late January, Henson visited mother's home to investigate the report. Henson testified that mother's home appeared appropriate. Mother denied using drugs and agreed to submit to a drug screen that day. Mother tested negative. During this encounter, Mother agreed to perform a follow-up drug screen later in February 2019. However, mother did not appear for the subsequent test and failed to cooperate further with Henson. Henson testified that she attempted to have mother's boyfriend drug screened, but that he refused. Henson closed the investigation, despite continuing concerns, because of mother's lack of cooperation with WCCS.

{¶ 4} In September 2019, WCCS received a second report concerning mother. This time, there was an allegation of violence against N.W. and a one-time failure by mother to receive M.W. from the school bus. N.W. displayed an injury to her head that she told the school was caused by mother throwing a cellular telephone at her. Henson again went to mother's house to investigate this report. Henson was able to see the child and confirm

there was some bruising on the child's head. In discussing the matter, mother tearfully informed Henson that the injury was an accident. Mother explained that N.W. had asked to use her phone, so she absent-mindedly tossed it at the child. N.W. failed to catch the phone and it hit her in the head. Henson asked mother to submit to another drug screen and mother agreed. Mother tested negative. As part of the investigation, Henson requested that mother take N.W. to the hospital to have the child's injury evaluated, have the children participate in a forensic interview, and enter into a safety plan for the children. Mother agreed to have N.W. medically evaluated and took N.W. to the hospital for an examination. Mother would not agree to the safety plan and refused to allow any removal of the children from her home. Mother agreed to the forensic interview. However, she failed to produce the children for the interview. Thereafter, mother would not answer the telephone or respond when Henson called or visited the home. On one occasion, Henson visited mother's home and knocked on the door without response. Henson left a note on the door. As Henson was leaving, she turned back towards the door and saw that the note was gone. This indicated to her that someone was home at the time. Henson again closed the investigation due to the lack of cooperation.

{¶ 5} Relating to this second report, mother admitted at the adjudicatory hearing that on one occasion in August 2019 she was not present to receive M.W. from the school bus. This required the bus to return M.W. to school. The school then had to call mother who, in turn, had to pick up M.W. at school.

{¶ 6} In November 2019, WCCS received a third report concerning domestic violence between mother and her boyfriend. Hogg testified that he initially believed the incident had occurred recently. Hogg visited mother to speak with her about the incident. Mother denied any violence had recently occurred and demonstrated to Hogg that she had

no injuries. Upon further investigating police records, Hogg discovered that police had responded to a domestic incident in August 2019. Both mother and boyfriend testified about the incident. Boyfriend had agreed to give mother time to relax and drink alcohol while he put the children to bed. An argument started later that evening when the boyfriend asked mother to conduct herself more quietly so he could get some sleep before work the next day. The argument escalated and the boyfriend attempted to disengage and go back to the bedroom. He barricaded the door to keep mother out and end the conflict. When mother continued to argue, boyfriend called police to intervene. He denied that the altercation was physical. Both mother and boyfriend testified that neither party was arrested that evening. Mother admitted that she had been drinking that evening to the point of intoxication. Mother denied that her children found her unconscious and unresponsive as a result of her intoxication as indicated in the police report of the incident but conceded that she could not remember parts of the evening.

{¶ 7} During the November 2019 WCCS investigation, mother refused to be drug screened and advised Hogg she would not cooperate with WCCS without a court order. As a result, Hogg was unable to speak with the children, assess the home, or determine the children's safety. Hogg filed the instant complaints and obtained an order from the court for the children to participate in a forensic interview.

{¶ 8} During the hearing, mother and her boyfriend also revealed an incident involving police that occurred in May 2019. At the time, mother had invited her cousin over to the house. The boyfriend suspected that the cousin was smoking marijuana. When he confronted mother and the cousin, they denied knowledge of the marijuana. The boyfriend then called the police to report the drug use. Before police responded, the cousin admitted to the marijuana. To deescalate the situation, mother left the home that evening after police

arrived. Both mother and the boyfriend denied that mother had used marijuana that evening.

{¶ 9} Based on the foregoing, the juvenile court found clear and convincing evidence that the children were dependent children pursuant to R.C. 2151.04(C). The juvenile court continued its prior order of protective supervision and set the matter for a dispositional hearing in February 2020 before a magistrate. After the hearing, a magistrate recommended that the children remain subject to the protective supervision of WCCS. The juvenile court adopted the magistrate's decision as the disposition.

{¶ 10} Mother now appeals and raises one assignment of error for review:

{¶ 11} THE TRIAL COURT ERRED WHEN IT FOUND MINOR CHILDREN TO BE DEPENDENT CHILDREN AS SAID FINDING WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶ 12} In her sole assignment of error, mother argues that the trial court erred by adjudicating M.W. and N.W. dependent children pursuant R.C. 2151.04(C). In support, mother argues that the state failed to prove a legitimate risk of harm to the children that necessitated state intervention.

{¶ 13} Pursuant to R.C. 2151.04(C), a dependent child is a child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." R.C. 2151.04(C) is to be applied broadly to protect a child's health, safety, and welfare. *In re L.H.*, 12th Dist. Warren Nos. CA2018-09-106, and CA2018-09-109 through CA2018-09-111, 2019-Ohio-2383, ¶ 41. The focus is on the condition of the child and whether the child has adequate care or support. *In re A.P.*, 12th Dist. Butler No. CA2005-10-425, 2006-Ohio-2717, ¶ 27. The law does not require a court to experiment with a child's welfare to see if the child will suffer actual detriment or harm, rather it is

- 5 -

sufficient to show "circumstances giving rise to a legitimate risk of harm." *In re L.H.* at ¶ 41. To prove the child is dependent pursuant to R.C. 2151.04(C) there must be evidence of conditions or environmental elements adverse to the normal development of the child. *In re N.J.*, 12th Dist. Warren Nos. CA2016-10-086, CA2016-10-090, and CA2016-10-091, 2017-Ohio-7466, ¶ 19. Additionally, the state does not have to establish fault on the part of a parent, although, the court may consider a parent's conduct as it forms part of the child's overall environment and may produce an adverse impact on the child. *In re S.W.*, 12th Dist. Brown No. CA2011-12-028, 2012-Ohio-3199, ¶ 12. The adverse impact cannot be inferred in general but must be specifically demonstrated. *In re L.H.* at ¶ 40, citing *In re Burrell*, 58 Ohio St.2d 37, 39 (1979).

{¶ 14} The state bears the burden of proving dependency at the time alleged in the complaint. *In re L.J.*, 12th Dist. Clermont No. CA2007-07-080, 2007-Ohio-5498, ¶ 12. The juvenile court's adjudication of a child as dependent must be supported by clear and convincing evidence. R.C. 2151.35(A)(1); *In re T.B.*, 12th Dist. Fayette No. CA2014-09-019, 2015-Ohio-2580, ¶ 12. Clear and convincing evidence is that which will produce a firm belief or conviction in the mind of the trier of fact of the facts sought to be established. *In re T.G.*, 12th Dist. Butler Nos. CA2007-07-158 and CA2007-07-171, 2008-Ohio-1795, ¶ 29.

{¶ 15} An appellate court's standard of review for a dependency adjudication is whether there is sufficient, credible evidence in the record to support the juvenile court's decision. *In re J.Q.*, 12th Dist. Preble No. CA2020-02-003, 2020-Ohio-4507, ¶ 8. "A reviewing court will not reverse a finding by a trial court that the evidence was clear and convincing unless there is a sufficient conflict in the evidence presented." *In re T.B.*, 2015-Ohio-2580 at ¶ 12.

{¶ 16} After review of the record, we hold that the evidence was sufficient to

adjudicate M.W. and N.W. dependent children.[1]  The evidence demonstrated that there were circumstances that adversely impacted the children's environment to warrant state involvement in the children's guardianship.  Mother left Kentucky, ostensibly, to avoid an investigation into her drug use.  Concerns of drug use at the home were bolstered by mother's and boyfriend's admission concerning a May 2019 police encounter relating to marijuana use at the home.  While mother and boyfriend denied that mother used drugs, drugs were present in the home and boyfriend found it necessary to obtain police intervention.  The foregoing also provides context to mother and boyfriend's refusal to submit to drug screens, further raising concerns about drug use in the home.  As we have previously explained, it is reasonable for a court to conclude that children should not be in an environment where drug use takes place.  *In re L.H.*, 2019-Ohio-2383 at ¶ 47.

{¶ 17} Next, the August 2019 incident indicates domestic turmoil if not domestic violence in the home.  While mother testified that she only occasionally drinks alcohol, she admitted that in August 2019 she drank sufficient quantities that she could not remember parts of the evening and her conduct with her boyfriend became so contentious he requested police intervention.  The August episode suggests that mother may have substance abuse issues with alcohol.  The May and August episodes together display a substantial breakdown in household communication which demonstrates an environment adverse to normal child development.  Furthermore, when the domestic turmoil is considered in conjunction with mother's admission that she failed to receive M.W. from the bus stop and caused an injury to N.W.'s head, the juvenile court had a clear and convincing basis to find conditions that pose a legitimate risk of harm to the children.

---

1. We note that the juvenile court did not provide findings of fact or explain what evidence it relied on for its decision.

{¶ 18} Both the substance abuse and the domestic turmoil issues are compounded by the fact that mother refused to cooperate with WCCS. Mother refused to submit to sequential drug screenings during the course of WCCS's investigations; refused to permit the children to participate in forensic interviews until ordered by the court in November 2019; and stopped communicating with agency investigators.[2] This court recognizes that mother does not have to cooperate with WCCS, and a lack of cooperation alone is insufficient to establish dependency pursuant to R.C. 2151.04(C). Nevertheless, mother's lack of cooperation occurred in the context of legitimate concerns for the children's safety and welfare. Thus, the refusal to cooperate is a factor from which the juvenile court could draw a negative inference.

{¶ 19} Considering that mother left Kentucky in the midst of a children's protective services investigation, the report of drug use in the home, the incident involving mother consuming alcoholic beverages to near blackout, the injury suffered by N.W., mother's failure to be home to receive M.W. from the school bus, the domestic turmoil in the home, and mother's adamant refusal to cooperate with WCCS to dispel the concerns for the children's safety, there was sufficient evidence for the juvenile court to determine that the children were in an environment adverse to their welfare and were dependent children.

{¶ 20} In light of the foregoing, the juvenile court did not err in adjudicating the children dependent. Accordingly, mother's sole assignment of error is overruled.

{¶ 21} Judgment affirmed.

PIPER, P.J. and HENDRICKSON, J. concur.

---

2. Mother testified that there were some transportation issues with the first court-ordered forensic interview, but she eventually complied with the order and the children completed the interview.