[Cite as *In re Ha.S.*, 2025-Ohio-5735.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

In re Ha.S., Hy.S.

Court of Appeals No. H-25-001
H-25-002

Trial Court No. DNA202400072
DNA202400073

**DECISION AND JUDGMENT**

Decided: December 23, 2025

* * * * *

Alex W. Smith, Esq., for appellant.

Richard H. Palau, Esq., for appellee.

* * * * *

**ZMUDA, J.**

{¶ 1} Appellant, the father of the minor children Ha.S. and Hy.S. ("Father"), appeals from the January 7, 2025 judgment of the Huron County Court of Common Pleas, Juvenile Division adjudicating Ha.S. and Hy.S., dependent. Father's single assignment of error challenges the trial court's dependency adjudication. For the reasons that follow, the trial court's judgment is affirmed.

# I. Facts and Procedural History

{¶ 2} On October 25, 2024, appellee, Huron County Department of Job and Family Services, filed a complaint alleging that Ha.S. and Hy.S. were dependent children. The complaint alleged that Father had made several statements about his desire to sexually assault children of various ages, including newborn infants and a 5-year-old girl. The complaint further alleged that Father communicated these statements to a 15-year-old child through an online dating site and that Father arranged a meeting with the 15-year-old girl, telling her that he intended to engage in sexual activity with her. Finally, according to the complaint, although Father and the mother of Ha.S. and Hy.S. ("Mother") initially agreed to a safety plan, Father refused to undergo certain testing requested by appellee, Mother expressed her desire to remain married to Father, and both Mother and Father wanted Father to have unsupervised access to the children.

{¶ 3} An emergency shelter care hearing was held on October 25, 2024. Following the hearing, the children were placed in the temporary custody of Mother and the court ordered that Father vacate the family home. Father was granted supervised visitation with the children.

{¶ 4} An adjudicatory hearing was held on January 6, 2025. At the hearing, Father's attorney initially stated that he planned to admit to the allegations in the complaint. However, the trial court did not engage in any colloquy with Father. Instead, the trial court asked appellee to proceed with its evidence.

2.

{¶ 5} Appellee called Detective Scott Hamernik with the Norwalk Police Department to testify. Detective Hamernik testified that in July 2024, an individual named Brian Knepp who was involved with a Facebook group called 814 Pred Hunter contacted him claiming that he had information on Father. According to Knepp, individuals working with 814 Pred Hunter who were pretending to be juvenile females had engaged in conversations with Father in which Father expressed sexual interest in minors. Still posing as juvenile females, those individuals set up a meeting with Father in Stark County. After Father failed to appear for the meeting, individuals appeared at a park in Norwalk near the family's home where they confronted Father.

{¶ 6} Detective Hamernik explained that because the individuals working with 814 Pred Hunters were neither minors nor law enforcement, Father's conversations with them were not illegal. However, Detective Hamernik met with Father and Mother to investigate whether other criminal activity may have occurred.

{¶ 7} During the meeting, Father and Mother admitted that Father had made online "graphic sexual statements … about what he wanted to do with … juvenile females … as young as a several hours old all the way up to 80-year-old females." Father communicated these statements in 2024 to three different individuals, all of whom Father had "believed to be juveniles based on the messages from them and photos." Detective Hamernik testified that he was careful to clarify with Father that Father believed he was speaking with minors and not other adults engaging in role play, and

3.

Father confirmed that although his statements were "just online fantasies," he believed he was communicating with minors.

{¶ 8} Both Father and Mother consented to a search of the electronic devices in their home. Although police found "graphic images" in their search, none of the images were "illegal." Detective Hamernik testified that police did find evidence that Father may have been having conversations with a minor living in western Ohio. Although Detective Hamernik testified that an investigation was ongoing into these conversations, Hamernik confirmed that no charges had been filed against Father.

{¶ 9} Next, Susan Heydinger, a social worker who works for appellee, testified regarding appellee's investigation. Heydinger testified that appellee became involved for two reasons: concern about Father's sexually explicit statements involving minors as well as concern for the risk of harm to Ha.S. and Hy.S. from others as a result of Father's actions. Heydinger explained that 814 Pred Hunters had posted a video of Father to Facebook along with the family's address, there were concerns that people were going to the family's home to confront Father, and the children's mother even contacted the police regarding one such incident. In addition, after news of Father's statements spread through the community, 8-year-old Hy.S. was bullied at school and during sporting events, and he was "jumped" by other kids at a park.

{¶ 10} Heydinger testified that Father and Mother initially agreed to a voluntary case plan. Father agreed to move out of the family home and to limit his visitation with the children to supervised visits, and Father participated in counseling with a provider

4.

with whom he had already established care prior to the onset of the case. However, Father refused to undergo the Abel Assessment for Sexual Interest, which appellee recommended so that Father could get specific treatment for the concerns raised by his statements regarding the sexual assault of minors. Father and Mother also told appellee they no longer agreed to Father living outside the family home nor did they agree that Father needed supervision when he was with the children.

{¶ 11} Heydinger confirmed that there was no evidence that Father had ever harmed his children physically. However, Heydinger maintained that Father's statements of his desire to sexually assault newborn babies and 5-year-old children were very concerning in light of the ages of Father's children, who were 4 and 8 years old at the time. Heydinger asserted Father's statements indicated a possibility that Father would harm his children. Heydinger also pointed out that Hy.S. had been bullied and physically assaulted due to Father's actions.

{¶ 12} No further witnesses testified, and appellee did not present any additional evidence. Father did not present any evidence of his own. Instead, he argued that appellee had failed to prove dependency. Father maintained that because his statements were constitutionally protected, there was no evidence that he had performed any of the acts in those statements, and there was no evidence that he had physically harmed his children, appellee had failed to establish that he was a danger to his children.

{¶ 13} At the hearing, the trial court found by clear and convincing evidence that both children were dependent. The trial court pointed to "three statements that [F]ather

made during the course of 2024 that were deeply disturbing," finding that "those comments did have a detrimental impact on the children and the family and the household." The trial court issued a judgment entry reflecting its findings and adjudicating Ha.S. and Hy.S. dependent on January 7, 2025.

## II. Assignment of Error

{¶ 14} Father filed a timely appeal asserting the following assignment of error for review:

> The trial court's finding of dependency is against the manifest weight of the evidence and is unsupported by clear and convincing evidence.

## III. Law and Analysis

{¶ 15} As a preliminary matter, in his notice of appeal, Father indicated his intention to challenge two judgments from the trial court, the court's January 7, 2025 order adjudicating the children dependent and the January 14, 2025 order following the court's dispositional hearing in which the court required Father to undergo an ABLE assessment and required Father's contact with his children to be supervised. In his brief, Father asserts arguments concerning both the dependency adjudication as well as the trial court's order following the dispositional hearing. However, Father's single assignment of error concerns the trial court's dependency adjudication, and it does not address any finding from the trial court's January 14, 2025 order. "Pursuant to App.R. 12(A)(1)(b), an appeal is determined based upon the assignments of error set forth in the briefs." *State v. Ridener*, 2025-Ohio-2845, ¶ 15 (6th Dist.). "An appellate court rules on assignments

6.

of error only, and cannot address mere arguments." *Gilliam v. Rucki*, 2023-Ohio-1413, ¶ 27 (6th Dist.). Accordingly, we shall only review the issue raised in Father's assignment of error: whether the trial court's dependency adjudication was against the manifest weight of the evidence.

{¶ 16} In support of his assignment of error, Father argues that appellee raised "unsubstantiated concerns despite no charges or evidence of harm" to his children, he did nothing to make him an unsuitable parent, and that the dependency finding was based on mere speculation. "A trial court's adjudication of a child as … dependent must be supported by clear and convincing evidence." *In re C.T.*, 2018-Ohio-3823, ¶ 52 (6th Dist.), citing R.C. 2151.35(A)(1); Juv.R. 29(E)(4). Clear and convincing evidence " 'produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. In a manifest-weight challenge, an appellate court must consider whether the adjudication was supported by clear and convincing evidence and "will not reverse a trial court's adjudication where competent and credible evidence supports the findings of fact and conclusions of law." *In re C.T.* at ¶ 53.

{¶ 17} A dependent child is a child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." R.C. 2151.04(C). "A finding of dependency 'requires no showing of fault, but focuses exclusively on the child's situation …'" *In re C.T.* at ¶ 60, quoting *In re Riddle*, 79 Ohio

7.

St.3d 259, 262 (1997). A parent's conduct is only relevant to the extent that it is part of the child's environment. *In re A.C.*, 2010-Ohio-4933, ¶ 74 (6th Dist.). Notably, evidence of "actual harm to a child is not necessary. Rather, circumstances giving rise to a legitimate risk of harm may suffice to support an adjudication of dependency under R.C. 2151.04(C)." *In re K.K.*, 2024-Ohio-2595, ¶ 44 (12th Dist.), quoting *In re N.J.*, 2017-Ohio-7466, ¶ 20 (12th Dist.). An "agency [is] not required to wait until something happen[s] to [a child] in order to demonstrate that [the child is] at risk." *Id.*, citing *In re Pieper Children*, 85 Ohio App. 3d 318, 327 (12th Dist.1993).

{¶ 18} Here, appellee presented uncontroverted testimony that Father admitted to expressing a desire to sexually assault children of varying ages, including those close in age to his own children, and he communicated those desires to at least three individuals whom he believed were minors, going so far as to plan to meet one of those minors. Indeed, police in western Ohio have opened an investigation regarding Father's communications with a minor living there. Moreover, in making online statements regarding his desire to engage in pedophilia, Father has drawn the attention of online vigilantes and the scrutiny of his community to his family, leading to the exposure of the family's address online, visits to the family home from those intent on confronting Father for his actions, and the bullying and assault of Hy.S. Accordingly, appellee presented competent, credible evidence that a legitimate risk of harm exists in the children's environment. Although appellee has not presented any evidence that Father has

8.

physically harmed either of his children, such evidence is not required to establish dependency. *In re K.K.* at ¶ 44.

{¶ 19} Because we find that the trial court had competent, credible evidence to adjudicate Ha.S. and Hy.S. dependent, the trial court's judgment is affirmed, and Father's assignment of error is not well-taken.

## IV. Conclusion

{¶ 20} For the foregoing reasons, the January 7, 2025 judgment of the Huron County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

| Thomas J. Osowik, J. | |
|---|---|
| | JUDGE |
| Gene A. Zmuda, J. | |
| | JUDGE |
| Charles E. Sulek, P.J. | |
| CONCUR. | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.